TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-11-00117-CR






Perren Boswell, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT

NO. 62610, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING



 

M E M O R A N D U M O P I N I O N




 A jury convicted Perren Boswell of the third-degree felony offense of theft
from an elderly person over $1,500 but under $20,000. See Tex. Penal Code Ann. § 31.03
(West Supp. 2012). (1) The trial court assessed punishment at ten years' imprisonment and ordered that
Boswell pay his court-appointed attorney's fees and $5,210 in restitution to his victim. In two issues,
Boswell appeals the trial court's judgment ordering him to pay his court-appointed attorney's fees
and the trial court's admission of evidence of subsequent bad acts presented to the jury at trial. We
will modify the judgment as to the order requiring that Boswell pay his court-appointed attorney's
fees and otherwise affirm the judgment of conviction.






BACKGROUND


 On November 26, 2007, Boswell approached 78-year-old Mary Edmondson at her
home and offered to resurface her driveway for $2,000. Boswell claimed that he worked for the
Texas Department of Transportation (TxDOT), and he assured Edmondson that he could resurface
her driveway cheaply because the asphalt he would use was leftover from another highway building
project and the labor was already paid for by TxDOT.

 Edmondson was skeptical, so Boswell offered to resurface two to three yards of
her driveway as a free sample. If Edmondson liked it, Boswell would complete the entire driveway.
Edmondson agreed to the free sample and went into her house. When she checked on the project,
Boswell's crew had resurfaced half of her driveway. Charles Garland arrived when the driveway was
almost completely resurfaced and told Edmondson that she was going to have to pay $8,600, instead
of the previously quoted $2,000. Despite the large discrepancy between the quoted price and the
final bill, Edmondson wrote a check to Garland for $8,600, which he accepted. Later that evening
Edmondson told her daughter what Boswell and Garland had done. Feeling scammed, Edmondson
and her daughter called the police.

 Deputy Sheriff T.J. Cruz investigated Edmondson's claim of fraud and learned
that TxDOT had not approved of any discounted driveway resurfacing and Boswell was not a
TxDOT employee. Soon after that discovery, Cruz fielded complaints from a number of other
elderly persons who asserted fraud claims identical to Edmondson's claim.

 On December 5, 2007, Cruz was alerted to another situation similar to Edmondson's,
occurring at the home of Jimmy Koczka. Cruz immediately drove to Koczka's residence where he
saw a crew of men preparing to resurface Koczka's driveway. Cruz called Edmondson, who then
drove to Koczka's residence and identified Boswell as the same man who solicited her. Edmondson
also identified the truck that Boswell claimed TxDOT owned, as well as the truck that Boswell had
driven to her house. Boswell was arrested and later indicted for theft from an elderly person over
$1,500 but less than $20,000.

 Boswell pleaded not guilty and requested a jury trial with any sentencing by
the trial court. The jury found Boswell guilty. The trial court assessed punishment as ten years'
imprisonment and ordered Boswell to pay court costs, his court-appointed attorney's fees, and
$5,210 in restitution to Edmondson. This appeal followed.



ANALYSIS


Repayment of court-appointed attorney's fees

 In his first issue, Boswell argues that the trial court erred by ordering him to pay his
court-appointed attorney's fees. He states that he was indigent from the outset of the trial and
his financial status has not changed. Before trial, Boswell completed a financial questionnaire. The
trial court found him indigent and appointed an attorney for him. After the judgment required
Boswell to pay his court-appointed attorney's fees, Boswell filed a motion supported by an affidavit
requesting a free appellate record because of his indigency. The trial court granted the motion, again
finding Boswell indigent. Based on the record, the State concedes that the trial court erred in assessing the
court-appointed attorney's fees against Boswell. Under the code of criminal procedure


[i]f the court determines that a defendant has financial resources that enable him to
offset in part or in whole the costs of the legal services provided, including any
expenses and costs, the court shall order the defendant to pay during the pendency
of the charges or, if convicted, as court costs the amount that it finds the defendant
is able to pay.



Tex. Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2012) (emphases added). The trial court's
comments in open court when ordering Boswell to pay attorney's fees--and the implicit underlying
determination under article 26.05 that he has financial resources to pay attorney's fees--explain the
apparent conflict in the pre- and post-trial findings of Boswell's indigency. The trial court stated that
Boswell had the ability to earn income upon his release from prison and therefore had the financial
resources to pay attorney's fees. However, courts have held that the statute requires a determination
of financial resources and ability to pay that is a snapshot assessment of contemporaneous
resources and financial ability to pay, not a speculative prediction. Dominguez v. State, 363 S.W.3d
926, 935 (Tex. App.--Austin 2012, no pet.) (citing Roberts v. State, 327 S.W.3d 880, 883-84
(Tex. App.--Beaumont 2010, no pet.)). That view is supported by the Legislature's use of the
present tense--i.e., "has financial resources" and "is able to pay." Tex. Code Crim. Proc. Ann.
art. 26.05(g) (emphases added). The State concedes that the evidence supporting the findings of
indigency and the absence of evidence of changed circumstances require that the judgment be
modified to delete the order that Boswell pay his court-appointed attorney's fees.

 Thus, we sustain Boswell's first issue and modify the trial court's judgment to delete
the order requiring Boswell to pay his court-appointed attorney's fees of $4,264.


Admissibility of extraneous offenses occurring after the charged offense

 In his second issue, Boswell argues that the trial court committed reversible error by
allowing testimony of subsequent bad acts--specifically, additional paving jobs--to be presented
to the jury. He contends that (1) the extraneous offenses are not admissible under section 31.03(c)(1)
of the penal code or Texas Rule of Evidence 404(b), citing Hegar v. State, 11 S.W.3d 290
(Tex. App.--Houston [1st Dist.] 1999, no pet.), and (2) the trial court should have applied a
balancing test under Texas Rule of Evidence 403 to determine whether the extraneous offenses were
more prejudicial than probative.

 During trial, the court held a hearing outside the presence of the jury to consider
Boswell's objection to testimony regarding extraneous bad acts that occurred after the date of the
offense for which Boswell was being tried. The State explained that it was offering the evidence
under section 31.03(c)(1) of the Texas Penal Code and Rule 404(b) of the Texas Rules of Evidence.
Relying on Hegar v. State, Boswell argued that the Texas Penal Code controlled over the
Texas Rules of Evidence, and the Hegar court held that section 31.03(c)(1) only permits admission
of evidence of extraneous bad acts if they occurred before the offense being tried. The trial court
overruled Boswell's objection, but later instructed the jury to limit the impact of the testimony
regarding extraneous offenses to merely show Boswell's "scheme or plan," "knowledge," and
"identity." Boswell later re-urged his objection but further asked that the court conduct a "Rule 403
of the Texas Rules of Evidence balancing test." The trial court overruled the objection again, but
granted Boswell's request for a running objection to all testimony about Boswell's extraneous
bad acts.


 Standard of review

 "An appellate court reviewing a trial court's ruling on the admissibility of evidence
must utilize an abuse-of-discretion standard of review." Weatherred v. State, 15 S.W.3d 540, 542
(Tex. Crim. App. 2000). The trial court's ruling will be upheld if it is found to be within the zone of
reasonable disagreement. See id.; Sexton v. State, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002). If an
abuse of discretion is found to have affected a constitutional right, a harm analysis must be utilized
to assure beyond a reasonable doubt that the error did not contribute to the conviction or punishment.
Tex. R. App. P. 44.2(a). If the abuse of discretion does not affect a constitutional right, it must be
disregarded. Tex. R. App. P. 44.2(b).


 Admissibility under the penal code and rule 404(b)

 Boswell argues that the evidence of a subsequent offense is inadmissible under
section 31.03(c)(1) of the penal code as interpreted in Hegar. See 11 S.W.3d at 296-98. In that
case, the trial court convicted Hegar of misdemeanor theft by check after he paid for goods
using a checking account that had insufficient funds. Id. at 292. On appeal, Hegar challenged the
trial court's admission of evidence of his other returned checks, including checks issued after the
check giving rise to the charge for which he was convicted. Id. at 296. The State argued that the
other returned checks were admissible evidence under section 31.03(c)(1) of the penal code (defining
theft) and Texas Rule of Evidence 404(b) (concerning evidence of "other crimes, wrongs, or acts").
Id. at 297.

 The First Court of Appeals considered the plain language of the theft statute, which
provides that "[e]vidence that the actor has previously participated in recent transactions other
than, but similar to that which the prosecution is based is admissible for the purpose of showing
knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not
guilty." Tex. Penal Code Ann. § 31.03(c)(1) (emphasis added). The Hegar court held that the theft
statute authorized admission of evidence of transactions occurring before the charged offense, but
not those occurring afterward. Id. at 297.

 The Hegar court then considered whether the evidence was admissible under
rule 404(b) of the Texas Rules of Evidence. Id. Rule 404(b) states


Evidence of other crimes, wrongs, or acts may be admissible to provide proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident, provided that upon timely request by the accused in a criminal
case, reasonable notice is given in advance of trial of intent to introduce in the State's
case-in-chief such evidence other than that arising in the same transaction.



Tex. R. Evid. 404(b) (emphasis added). The court found no time limit for admission of extraneous
offenses under Rule 404(b) and held that evidence of extraneous offenses arising from acts that
occur after the offense in question was admissible under Rule 404(b). Hegar, 11 S.W.3d at 297
(looking to plain language of rule as well as common law embodied in Albrecht v. State, 486 S.W.2d
97 (Tex. Crim. App. 1972)). Despite its interpretation of the theft statute, the Hegar court saw
"no logical reason to confine admissibility of extraneous transactions only to those occurring prior
to the charged offense" and held that the subsequent offenses were admissible under the rules of
evidence. Id.

 Boswell argues that section 31.03(c)(1) expressly authorizes only admission
of evidence of transactions occurring before the charged offense. See Tex. Penal Code Ann.
§ 31.03(c)(1). That is true, as far as it goes; however, section 31.03(c)(1) is silent regarding the
admissibility of evidence of offenses occurring after the charged offense. See id. In other words,
it does not prohibit admission of subsequent offenses. The limited scope leaves room for the court-made rules of evidence to expressly allow evidence of subsequent transactions to be admitted as
crimes, wrongs, or acts used to show the purposes prescribed by the rules of evidence. See Tex. R.
Evid. 404(b); see also Tex. Gov't Code Ann. § 22.109 (West 2004) ("The court of criminal appeals
has the full rulemaking power in the promulgation of rules of evidence in the trials of criminal cases,
except that its rules may not abridge, enlarge, or modify the substantive rights of a litigant.").

 This case is analogous to Hegar. The trial court in this case admitted extraneous
offenses because those offenses provided the jury with proof of Boswell's identity, showed
his knowledge, and showed a scheme--all purposes expressly permitted under Rule 404(b). The
trial court also complied, via her instructions to the jury, with Boswell's request to limit the
purpose of the extraneous-offense evidence to "merely prove, if it does, any sort of scheme, identity,
or motive."

 Like the court in Hegar, we hold that the trial court did not abuse its discretion by
admitting extraneous evidence of Boswell's subsequent bad acts to show the permissible factors.


 Rule 403 balancing test

 Boswell also contends that the trial court erred by not conducting a balancing test
before allowing the testimony of extraneous offenses. See Tex. R. Evid. 403. Texas Rule of
Evidence 403 states, "Although relevant, evidence may be excluded if its probative value is
substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Id.
When a Rule 403 objection is made and then overruled, the trial court necessarily conducts a
balancing test by considering and overruling the objection. Parmer v. State, 38 S.W.3d 661, 670
(Tex. App.--Austin 2000, pet. ref'd); Howland v. State, 966 S.W.2d 98, 103 (Tex. App.--Houston
[1st Dist.] 1998), aff'd, 990 S.W.2d 274 (Tex. Crim. App. 1999) (citing Yates v. State, 941 S.W.2d
357, 367 (Tex. App.--Waco 1997, pet. ref'd)). It is not necessary for a trial court to put its
findings and conclusions about a Rule 403 objection on the record. Green v. State, 934 S.W.2d 92,
104 (Tex. Crim. App. 1996). In Parmer, this Court held that when a Rule 403 objection is made and
then immediately overruled, the trial court essentially performed a balancing test in that moment. 
38 S.W.3d at 670. A balancing test does not need to be performed on the record to render the
balancing test completed. Id.; Green, 934 S.W.2d at 104.

 Boswell made his Rule 403 objection at trial and the trial court unequivocally
overruled his objection. As in Parmer, the trial court in this case performed a balancing test when
it decided to overrule Boswell's objection. At no point did Boswell request that the findings and
conclusions of the trial court's balancing test be placed on the record. Thus, the court is deemed to
have conducted a balancing test. See Parmer, 38 S.W.3d at 670.

 Because the trial court did not err in allowing testimony about Boswell's subsequent
offenses, we overrule Boswell's second issue. Finding no error in the admission of the subsequent
offenses, we need not conduct a harm analysis.


CONCLUSION


 We modify the trial court's judgment of conviction to delete the order requiring
Boswell to pay $4,264 for his court-appointed attorney's fees and otherwise affirm the trial court's
judgment of conviction.


 _____________________________________________

 Jeff Rose, Justice

Before Justices Puryear, Rose and Goodwin

Modified and, as Modified, Affirmed

Filed: August 23, 2012

Do Not Publish

1. Because recent amendments to the penal code and code of criminal procedure did not
change the substance of the statutes relevant to this appeal, we cite to their current version.